**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------ x
TBH BRAND HOLDINGS LLC,                                :
                         Plaintiff,                    :
              - against -                              :   Civil Action No.:
                                                       :
                                                       :
BLACK STORM, S.A.                                      :
                         Defendant.                    :
------------------------------------------------------ X
```

# COMPLAINT

Plaintiff TBH Brand Holdings LLC ("Plaintiff") herein asserts its claims as against defendant Black Storm, S.A. ("Black Storm" or "Defendant") and alleges as follows:

**Jurisdiction and Venue**

1. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1), as the parties are citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest.

**2.** Venue is proper in this judicial district because Black Storm is subject to personal jurisdiction in the district with respect to the action and conceded to both jurisdiction and venue in this district. *See* 28 U.S.C. § 1391(c)(2). Specifically, Black Storm, in paragraph 21 of the document that forms the basis for the action, irrevocably agreed to submit to personal jurisdiction and venue in this judicial district.

**Parties**

3. Plaintiff is a New York limited liability company with its principal place of business in New York, New York. Plaintiff is the owner and licensor of the trademarks TAHARI and T

1

TAHARI ("Trademarks"). Plaintiff licenses the use of the Trademarks to various third parties, such as Defendant.

4. Defendant is a Mexican corporation with a business address of Presa Salinillas 397, 11500 Miguesl Hidalgo D.F., Mexico.

## FACTS RELEVANT TO ALL COUNTS

**The License Agreement**

5. In 2018, Defendant, began discussions and negotiations with TBH Brand Holdings LLC ("TBH") for the purpose of entering into a license agreement with TBH to utilize the Trademarks on men's and women's apparel and related accessories such as but not limited to, footwear, handbags/bags, fragrances, cosmetics/skincare, bath and body. At all relevant times, Defendant was and is a sophisticated party with experience in Trademarks and licensing transactions.

6. After an arms-length negotiation between sophisticated entities accustomed to negotiating such agreements, as of May 18, 2018, Defendant and TBH ("The Parties") entered into a license agreement ("License Agreement").

7. Among other things, the License Agreement sets forth the terms of the Parties' contractual obligations.

8. The initial term of the License Agreement was for five years, broken down into five annual periods, with a renewable option period for an additional five years.

9. As structured in the License Agreement and set forth in paragraph 2.1 of the License Agreement, the first annual period began after execution on May 18, 2018, and would continue through December 31, 2019.

10. The subsequent annual periods would begin on January 1, 2020 and run through December 31, 2020, January 1, 2021 and run through December 31, 2021, January 1, 2022 and run through December 31, 2022, and January 1, 2023 and run through December 31, 2023.

11. In consideration for the use of the Trademarks, Defendant agreed to pay TBH Guaranteed Minimum Royalty ("GMR") payments. Paragraph 7 of the License Agreement, referring to Schedule 1 (attached to the License Agreement and incorporated therein), sets forth the fee structure of the GMR and the timing of the payments.

12. Under each annual period as defined in the License Agreement, Defendant was required to pay TBH a GMR of $100,000 for the first annual period, a GMR of $110,000 for the second annual period, a GMR of $120,000 for the third annual period, a GMR of $130,000 for the fourth annual period and a GMR of $1400,000 for the fifth annual period.

13. The License Agreement also provided for the timing of the payments of the GMR for each Annual Period, set forth in quarterly payments.

14. In the First Annual Period, Defendant was to pay $20,000 upon execution of the License Agreement and then $20,000 on January 1, April 1, July 1, and October 1, 2019.

15. For the second annual period, Defendant was to pay $27,500 on January 1, April, July 1, and October 1, 2020.

16. For the third annual period, Defendant was to pay $30,000 on January 1, April, July 1, and October 1, 2021.

17. For the fourth annual period, Defendant was to pay $32,500 on January 1, April, July 1, and October 1, 2022.

18. For the fifth annual period, Defendant was to pay $35,000 on January 1, April, July 1, and October 1, 2023.

19. In the event Defendant defaulted on the GMR payments, paragraph 14 of the License Agreement provided TBH, as the licensor, may terminate the License Agreement on ten days written notice if Defendant fails to timely make payment of the GMR and fails to cure the default within the ten-day period.

20. Paragraph 15 of the License Agreement contains an acceleration clause, as it thereafter states that within ten days after the termination of the License Agreement, Defendant shall pay to TBH the GMR remaining for the balance of the then current term of the License Agreement.

21. Also included in paragraph 15 is a requirement, in the event of a termination of the License Agreement, Defendant shall deliver within thirty days after termination to TBH a complete and accurate schedule of Defendant's inventory of articles bearing the Trademarks and of related work in process (collectively defined as "Inventory"). TBH shall have the option to purchase first quality condition Inventory, with a requirement of Defendant to deliver, at no cost, the remaining poor-quality Inventory.

**Defendant's First Default**

22. Defendant failed to pay the April 1, 2020, quarterly payment pursuant to the License Agreement in the amount of $27,500.

23. Failure of Defendant to make the payment was a material breach of the License Agreement and was a material default under the terms the Agreement.

24. On May 11, 2020, Plaintiff sent a notice of default.

25. Defendant failed to comply with the default notice letter and to cure the within ten days, therefore terminating the License Agreement as of May 22, 2020, pursuant to the terms.

26. Pursuant to the terms of the License Agreement, the failure to pay the GMR and failure to cure acts as a material breach of the License Agreement.

27. Pursuant to the mutually agreed upon terms contained in the License Agreement, the full amount of the GMR due under the initial term would be accelerated and due upon demand.

28. Pursuant to the acceleration clause contained in paragraph 15 of the License Agreement, within ten days after termination Defendant is required to pay the remaining balance, or $472,500, due under the License Agreement.

29. Pursuant to the terms of the License Agreement, upon termination Defendant has certain responsibilities, including but not limited to, providing an inventory of remaining product bearing the Trademarks and to cease and desist selling any inventory bearing such Trademarks. Defendant has failed to comply with such contractual obligations.

30. Pursuant to the terms of the License Agreement, Defendant is contractually obligated to pay Plaintiff's legal fees associated with the enforcement of the License Agreement.

31. Defendant has failed to comply with its contractual obligations, including the failure to pay the April 2020, GMR and failed to provide an inventory of remaining product bearing the Trademarks.

## COUNT ONE
## FOR BREACH OF CONTRACT

32. Plaintiff repeats and re-alleges the allegations set forth in paragraphs above as though fully set forth herein.

33. Defendant is a sophisticated business, run by sophisticated business people who negotiated the License Agreement in an arm's length business transaction, and upon information and belief, with the assistance of counsel.

34. Plaintiff performed all necessary acts, duties and responsibilities under the terms of the License Agreement.

35.     It was agreed by and among the Parties that in consideration for the payment of GMR payments and Sales Royalties, Defendant was permitted to act as a licensee of TBH.

36.     Defendant did enter into the License Agreement and did utilize the Trademarks.

37.     As a result of the License Agreement, upon information and belief, Defendant did sell the articles in the permissible territory.

38.     Pursuant to paragraph 7 of the License Agreement, Defendant was required to make certain GMR payments based upon an agreed upon schedule.

39.     Defendant breached the License Agreement by failing to comply with the payment terms of the GMRs, specifically the payment due on April 1, 2020.

40.     As a result of the failure to cure the breach and default following written notice and cure period, the License Agreement was deemed terminated on May 23, 2020.

41.     Defendant breached the terms of the License Agreement by failing to pay the accelerated amounts due thereunder.

42.     Defendant has not cured its default.

43.     Defendant's acts and omissions caused a loss of business for Plaintiff.

44.     Pursuant to paragraph 15 of the License Agreement, Plaintiff is entitled to an acceleration of the full amount due pursuant to the document.

45.      Defendant is liable to Plaintiff in the amount of at least $472,500, including, but not limited to, together with interest and attorneys' fees associated with the collection of monies due therefrom.

## COUNT TWO
## FOR BREACH OF CONTRACT

46.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs above as though fully set forth herein.

47. Plaintiff performed all acts and duties as required under the terms of the License.

48. Subsequent to the termination of the License Agreement Defendant was required to provide an inventory of remaining products bearing the Trademarks and provide the same to Plaintiff.

49. Subsequent to the termination of the License Agreement Defendant was not permitted to sell the products bearing the Trademarks.

50. Defendant breached the License Agreement failing to provide the inventory as required by the License Agreement. If Plaintiff determines sales subsequent to the termination, it shall amend this complaint to include Trademarks infringement claims.

51. By virtue of its acts and omissions, Defendant breached the License Agreement.

52. Defendant should be ordered to specifically perform pursuant to the License Agreement and provide to Plaintiff: (i) the inventory; and (ii) an accounting of any sales of the licensed production subsequent to May 22, 2020.

53. Defendant is liable to Plaintiff in the amount to be determined at trial, but no less than any monies from the improper sale, including, but not limited to, together with interest and attorneys' fees associated with the collection of monies due therefrom.

## COUNT THREE
## FOR ATTORNEYS' FEES, COSTS AND EXPENSES

54. Plaintiff repeats and re-alleges the allegations set forth in paragraphs above as though fully set forth herein.

55. Paragraph 21.1 of each of the License Agreement, to the extent of any finding of a breach of the License Agreement, Defendant agreed to pay for reasonable attorneys' fees and costs in connection with the enforcement of the License Agreement.

56.     Due to the breach of the License Agreement, Plaintiff has been forced to retain counsel and incur costs that include, but are not limited to, filing fees and attorneys' fees.  In addition, Plaintiff will be forced to incur costs associated with service of process upon a Mexican entity.

57.     Due to the breach, Plaintiff is entitled to an award of attorneys' fees and costs associated with Plaintiff's enforcement of the License Agreement.

**WHEREFORE**, Plaintiff respectfully request that the Court find Defendant liable to Plaintiff as follows:

   i. On Count One, Defendant is liable to Plaintiff in the amount of at least $472,500 including, but not limited to, interest and attorneys' fees;

   ii. On Count Two, Defendant is liable to Plaintiff in the amount to be determined at trial, including, but not limited to, interest and attorneys' fees;

   iii. On Count Two, Defendant is liable to Plaintiff in the amount to be determined at trial, and Defendant is also ordered to specifically perform pursuant to the terms of the License Agreement, providing to Plaintiff: (i) the inventory; and (ii) an accounting of any sales of the licensed production subsequent to May 21, 2020;

   iv. On Count Three, Defendant is liable to Plaintiff in the amount of legal fees, costs and expenses incurred in the enforcement of the License Agreement, including cost of litigation and process; and

v. Any other relief the Court may deem just and proper.

Dated: New York, NY
August 19, 2020

Respectfully submitted,

**THE LAW OFFICES OF BARRY M. BORDETSKY**

By: /s/ Barry M. Bordetsky
Barry M. Bordetsky
Counsel for Plaintiff
570 Lexington Avenue, 24th Floor
New York, New York 10022
Tel. No. 212-688-0008
Email: barry@bordetskylaw.com